IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Submitted on Briefs August 2, 2021

## ROGER BASKIN v. PIERCE & ALLRED CONSTRUCTION, INC.

**Appeal from the Chancery Court for Davidson County**
**No. 20-872-IV    Russell T. Perkins, Chancellor**

_____

### No. M2021-00144-COA-R3-CV

_____

Plaintiff Roger Baskin sued Pierce & Allred Construction, Inc. ("Defendant") for breach of contract and breach of warranty, alleging Defendant failed to construct a house in Muscle Shoals, Alabama, in accordance with the parties' contract. Plaintiff alleged that although he "paid construction costs totaling more than $1,700,000, [Defendant] failed to complete construction of the house and has left Plaintiff with a home riddled with construction defects that affect every major system of the home." Defendant moved to dismiss the complaint under Tenn. R. Civ. P. 12.02(2) and (3), asserting that the trial court lacked personal jurisdiction over it, and that venue was improper in Davidson County. The trial court dismissed the complaint for lack of personal jurisdiction and improper venue. We hold that Defendant's contacts with Tennessee, including its purposeful applications for a certificate of authority to transact business and for a contractor's license in Tennessee, are such that Defendant should reasonably anticipate being haled into court in this state. Consequently, Tennessee courts may exercise personal jurisdiction over Defendant. We further find that Davidson County is a proper venue for this action, and therefore reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed;**
**Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and CARMA DENNIS MCGEE, J., joined.

Paul J. Krog and Nicholas D. Bulso, Brentwood, Tennessee, for the appellant, Roger Baskin.

Charles Michels, Nashville, Tennessee, for the appellee, Pierce & Allred Construction, Inc.

# OPINION

## I. BACKGROUND

In the fall of 2016, Plaintiff hired Defendant, a construction company incorporated and based in Alabama, to demolish a structure and construct a lake house on real property in Muscle Shoals, Alabama. The plans for the lake house were prepared in Tennessee and provided by Quirk Designs, a Nashville-based company. The contract anticipated completion of the house construction in about fifteen months, with an expected completion date around January of 2018.

Plaintiff filed his complaint on September 3, 2020. He alleged that Defendant (1) failed to construct the house in a good and workmanlike manner; (2) failed to complete construction on time and within budget, and in fact "failed to complete the project at all"; (3) "charged Plaintiff for services and materials never provided by. . . using the same invoices for multiple draw requests"; and (4) "negligently allowed expensive audio equipment delivered to the project site to be misappropriated from the site, resulting in a loss to Plaintiff of more than $6,000." Plaintiff alleged numerous construction defects in many different systems and areas of the house. He eventually hired a replacement contractor to finish construction and remedy the alleged defects.

Defendant moved for dismissal of the complaint for lack of personal jurisdiction and improper venue. Defendant argued that it did not have the requisite minimum contacts with the State of Tennessee to establish personal jurisdiction. In response, Plaintiff asserted that Defendant, among other things, applied for a certificate of authority to transact business in Tennessee in February of 2018. That same month, Defendant's sole owner and officer, Justin Allred, passed his Tennessee business and law management exam and successfully applied for a Tennessee contractor's license. Subsequently, Defendant undertook two projects in Tennessee, one involving the removal and transport of a cabin from Tennessee to Alabama, and the other construction of a nearly three million-dollar house in Savannah, Tennessee. Plaintiff also pointed to Mr. Allred's deposition testimony in which he stated that he "absolutely" intends to maintain Defendant's status "as a licensed contractor in Tennessee for the foreseeable future."

Defendant's certificate of authority to conduct business was administratively revoked in August of 2019. Its Tennessee contractor's license expired on March 30, 2020. Despite this, Mr. Allred testified on January 6, 2021, that Defendant had "just completed" construction of the house in Savannah, Tennessee.

The trial court granted Defendant's motion to dismiss, holding that it had no personal jurisdiction and that venue was improper in Davidson County. Regarding personal jurisdiction, the trial court found and held as follows, in pertinent part:

All of the events giving rise to this cause of action occurred in Alabama. The parties' contract herein was signed in Florence, Alabama, with payments made in Alabama and the work performed in Muscle Shoals, Alabama. Further, Defendant maintains its principal place of business in Alabama, and all subcontractors and people who worked on the project are located in Alabama.

Defendant's contacts with Tennessee do not meet the minimum contacts test. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Defendant's contacts with Tennessee are not so continuous or systematic as to render it at home in Tennessee. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). All of Defendant's current construction projects are in Alabama. . . .

Defendant has had two construction projects in Tennessee since its formation in 2013. One was the construction of a lake house in Savannah, Hardin County, Tennessee, for which it obtained its Tennessee construction license, and the other project involved moving a cabin from Tennessee to Alabama. Although Defendant obtained some materials in Tennessee for the Hardin County construction project, all subcontractors on that project, as well as on the relocation project, were brought in from Alabama.

\* \* \*

Defendant's other contacts with Tennessee, such as its now-expired Tennessee business certificate and contractor's license, are unrelated to Plaintiff's cause of action and do not rise to the level of sufficiently continuous and systematic as to render Defendant at home in Tennessee. The quantity and quality of Defendant's contacts with Tennessee are irregular at best. . . . The minor and attenuated contacts Defendant had with Tennessee during the Project and otherwise are insufficient to cause Defendant to reasonably anticipate being haled into court in Tennessee.

(Citations to record omitted; parties' names in original changed to "Defendant" and "Plaintiff" throughout).

The trial court ruled as follows regarding venue:

In determining venue, an important consideration is whether the cause of action is transitory or local. "A transitory action is based on a cause of action of a type that can arise anywhere." *Curtis v. Garrison*, 364 S.W.2d 933, 936

3

(Tenn. 1963). "[A] local action is based on a cause of action that can only arise in a particular locality, because 'the subject of the action' (meaning that which has sustained the injury complained of) is local, 'and cannot be injured at any other place.'" *Kampert v. Valley Farmers Coop.*, No. M2009-02360-COA-R10-CV, 2010 WL 4117146, at *2 (Tenn. Ct. App. Oct. 19, 2010) (quoting *Burger v. Parker*, 290 S.W. 22, 23 (Tenn. 1926)). Unlike a transitory action, a local action may only be brought in the county where the subject matter of the dispute is located; however, "not every action that involves a specific tract of land is considered a local action." *Id.*

While real property is necessarily implicated in a building project, no injuries to the real property are alleged here. Rather, the [c]omplaint focuses on the alleged breach of contract and breach of warranty and seeks damages for the breach. Accordingly, this suit may be properly characterized as a contract action.

Both breach of contract and breach of warranty claims are of a type that could arise anywhere; thus, this action is transitory in nature. *See Jonesboro Drywall & Plaster Co., Inc. v. Kirby*, No. 03A01-9508-CH-00276, 1995 WL 697901, at *1 (Tenn. Ct. App. Nov. 28, 1995). As such, it can be brought in the county where the cause of action arose or, because Pierce & Allred is not a natural defendant, either in the county where all or a substantial part of the events or omissions giving rise to the cause of action accrued or in the county where Defendant's registered agent for service of process is located. *See* Tenn. Code Ann. §§ 20-4-101(a); 20-4-104(1), (3).

At one time, [Defendant] maintained a registered agent for service of process in Davidson County, Tennessee. However, [Defendant] was dissolved as a foreign corporation in Tennessee on August 6, 2019. Additionally, [Defendant]'s Tennessee contractor's license expired on March 30, 2020. As such, [Defendant] does not maintain a registered agent for service of process in Tennessee. For these reasons and the reasons stated above, the Court determines that venue is proper in Alabama.

(Citations to record in original omitted).

## II. ISSUES

Plaintiff raises these issues on appeal: (1) did the trial court err in dismissing the complaint for lack of personal jurisdiction? (2) did the trial court err in dismissing the complaint for improper venue?

### III. STANDARD OF REVIEW

As recently stated by our Supreme Court:

A defendant may challenge the existence of personal jurisdiction by filing a motion to dismiss the complaint under Rule 12.02(2) of the Tennessee Rules of Civil Procedure. The defendant may choose to support the motion with affidavits or other evidentiary materials. If a defendant does so, the plaintiff must respond with its own affidavits or other evidentiary materials. *First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*, 489 S.W.3d 369, 382 (Tenn. 2015); *Gordon* [*v. Greenview Hosp., Inc.*], 300 S.W.3d [635], 644 [Tenn. 2009]. However, a Rule 12.02(2) motion is not converted to one for summary judgment when the parties submit matters outside the pleadings. *State v. NV Sumatra Tobacco Trading Co.*, 403 S.W.3d 726, 739 (Tenn. 2013); *Gordon*, 300 S.W.3d at 644.

The plaintiff bears the burden—albeit not a heavy one—of establishing that the trial court may properly exercise personal jurisdiction over a defendant. *First Cmty. Bank*, 489 S.W.3d at 382; *Gordon*, 300 S.W.3d at 643. When a defendant supports its Rule 12.02(2) motion with affidavits or other evidentiary materials, the burden is on the plaintiff to make a prima facie showing of personal jurisdiction over the defendant through its complaint and affidavits or other evidentiary materials. To make a prima facie showing of personal jurisdiction under Tennessee law, the factual allegations in the plaintiff's complaint, affidavits, and other evidentiary materials must establish sufficient contacts between the defendant and Tennessee with reasonable particularity. *First Cmty. Bank*, 489 S.W.3d at 383.

In evaluating whether the plaintiff has made a prima facie showing, the trial court must accept as true the allegations in the plaintiff's complaint and supporting papers and must resolve all factual disputes in the plaintiff's favor. *Sumatra*, 403 S.W.3d at 739. However, the court is not obligated to accept as true allegations that are controverted by more reliable evidence and plainly lack credibility, conclusory allegations, or farfetched inferences. *First Cmty. Bank*, 489 S.W.3d at 382. Nevertheless, the court should proceed carefully and cautiously to avoid improperly depriving the plaintiff of its right to have its claim adjudicated on the merits. *Gordon*, 300 S.W.3d at 644.

A trial court's decision regarding the validity of personal jurisdiction over a defendant presents a question of law. We therefore conduct a de novo review of the trial court's decision with no presumption of correctness. *First Cmty. Bank*, 489 S.W.3d at 382; *Gordon*, 300 S.W.3d at 645. In other words, in

this appeal, we conduct the same evaluation of [the] complaint and the parties' affidavits and supporting papers relating to [the] Rule 12.02(2) motion as the trial court.

*Crouch Ry. Consulting, Inc. v. LS Energy Fabrication, Inc.*, 610 S.W.3d 460, 470-71 (Tenn. 2020).

The issue of whether venue is proper in the trial court is likewise a question of law subject to our de novo review. *Kampert*, 2010 WL 4117146, at \*2; *Cohn Law Firm v. YP Se. Advertising & Publishing*, 2015 WL 3883242, at \*3 (Tenn. Ct. App. June 24, 2015) ("The procedural analysis and standards applied in deciding a motion to dismiss for improper venue are generally the same as in deciding a motion to dismiss for lack of personal jurisdiction.") (quoting 32A Am.Jur.2d *Federal Courts* § 1202).

## IV. ANALYSIS

### A. Personal Jurisdiction

A court must have jurisdiction over the person of a nonresident defendant in order to enter a valid judgment. *Crouch*, 610 S.W.3d at 469. Tennessee Code Annotated section 20-2-214(a) provides in pertinent part that

[p]ersons who are nonresidents of this state . . . are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from: (1) The transaction of any business within this state; . . . (5) Entering into a contract for services to be rendered or for materials to be furnished in this state; [or] (6) Any basis not inconsistent with the constitution of this state or of the United States[.]

Tennessee's other long-arm jurisdiction statute, Tenn. Code Ann. § 20-2-225, permits our courts to exercise jurisdiction "(1) On any other basis authorized by law; or (2) On any basis not inconsistent with the constitution of this state or of the United States." Our Supreme Court has recognized that "Tennessee's long-arm statutes expand the jurisdictional reach of Tennessee courts 'as far as constitutionally permissible.'" *Crouch*, 460 S.W.3d at 471 (quoting *First Cmty. Bank*, 489 S.W.3d at 384); *Sumatra*, 403 S.W.3d at 740. Consequently, "[t]he constitutional limits of that jurisdiction are 'set by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.'" *Id.* (quoting *Sumatra*, 403 S.W.3d at 741). The decisions of the U.S. Supreme Court regarding the interpretation of the jurisdictional limits imposed by the Due Process Clause are binding on Tennessee courts, and the decisions of lower federal courts in this regard can be instructive or persuasive authority. *Id.*

The Due Process Clause requires a showing of "reasonable notice to the defendant that an action has been brought and a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum." *Id.* at 470 (quoting *Kulko v. Super. Ct.*, 436 U.S. 84, 91 (1978); internal quotation marks and brackets omitted). As the *Crouch* Court observed,

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."
>
> [*International Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945)]. *International Shoe*'s "minimum contacts" paradigm has been the touchstone of personal jurisdiction for seventy-five years.
>
> [T]he analysis "cannot be simply mechanical or quantitative." *Id.* at 319, 66 S.Ct. 154. Instead, "[w]hether due process is satisfied must depend rather upon the quality and nature" of the defendant's activities. *Id.* Thus, in the wake of *International Shoe*, the relationship among the defendant, the forum, and the litigation became the central concern of the inquiry into personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014).
>
> *        *        *
>
> As to the question of the existence of minimum contacts, the Court has stated that contacts are sufficiently meaningful when they demonstrate that the defendant has purposefully directed activities at or availed itself of the forum state in such a way that the defendant should reasonably anticipate being haled into court there. *Burger King*, 471 U.S. at 472-74, 105 S.Ct. 2174. This " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " *Id.* at 475, 105 S.Ct. 2174 (citations omitted).

*Crouch*, 610 S.W.3d at 471-72.

In the present case, Defendant is incorporated in Alabama and has its principal place of business there. According to Mr. Allred, most of Defendant's construction projects have been in Alabama. As the trial court correctly held, Defendant's "contacts with Tennessee are not so continuous or systematic as to render it at home in Tennessee." Thus, the issue

we deal with here is one of specific, not general, personal jurisdiction. *See First Cmty. Bank*, 489 S.W.3d at 384-85; *Crouch*, 610 S.W.3d at 472 n.11 (explaining difference between specific personal jurisdiction and general personal jurisdiction, which requires a showing that "a defendant's affiliations with a forum state are so continuous and systematic as to render it essentially at home there").

In *Crouch*, our Supreme Court recently addressed a situation with some similarities to the present case. *Crouch* presented a breach of contract action involving a single agreement signed in another state, Texas, and involving a construction project in Texas. The *Crouch* defendant Lonestar, arguing no personal jurisdiction, asserted that

> among other facts, that it was not registered to do business in Tennessee, that it had no registered agent in Tennessee, that it had never visited Tennessee for any business purpose related to the contract, that it had no property or operations in Tennessee, that it did not direct specific advertising to Tennessee, that it did not routinely sell anything to Tennessee customers, and that it did not routinely make purchases in Tennessee. Lonestar further asserted that it did not solicit Crouch in Tennessee, that the work performed under the contract was related to a facility that Lonestar proposed to build in Baytown, Texas, and that all in-person meetings associated with the contract took place in Texas.

*Crouch*, 610 S.W.3d at 468. The plaintiff Crouch responded by pointing out that "Lonestar elected to commence a business relationship with Crouch, knowing that Crouch was a Tennessee company and would be performing work in Tennessee. Crouch further asserted that although Lonestar did not travel to Tennessee, Lonestar regularly communicated with Crouch in Tennessee and sent partial payment to Crouch in Tennessee." The Supreme Court found that Lonestar's knowledge that Crouch was a Tennessee company and that Crouch's custom design and engineering services for the construction project would be provided from Tennessee, along with "Lonestar's communications directed to Crouch in Tennessee during the parties' course of dealing, and Lonestar's mailing of a check to Tennessee in partial payment on the contract," provided sufficient minimum contacts to establish personal jurisdiction. *Id.* at 481.

The contacts and connections of Defendant to Tennessee in this case are significantly more substantial than those of the defendant in *Crouch*. The construction plans given to Defendant by Plaintiff for his Muscle Shoals house were created in Tennessee by a Nashville-based firm. It is undisputed that Plaintiff purchased lumber and tile in Tennessee and had those materials delivered to the construction site. Plaintiff testified by affidavit that Defendant "submitted invoices requesting payment of its twelve percent (12%) contractor's fees as applied to the costs of materials I purchased in

8

Tennessee." Defendant directed communications to Plaintiff in Tennessee, including emails and text messages providing invoices and requesting payment.

Defendant's direct, purposeful attempts to solicit and conduct its business in Tennessee are also significant. As already noted, Defendant successfully applied for certificate of authority to transact business in Tennessee and for a Tennessee contractor's license. Mr. Allred also requested early review of his application and a hardship license that would enable Defendant to begin construction work on the Savannah, Tennessee house earlier than usual, supported by a letter from Tennessee residents urging the approval of the hardship license, which the state granted. Defendant then proceeded to construct the multimillion-dollar house in Savannah. Defendant reached out to Tennessee residents through its website, which stated that it was "licensed in Alabama and Tennessee." Thus, Plaintiff has shown "some act or acts by which [Defendant] purposefully availed itself of the privilege of conducting activities within Tennessee, or stated another way, deliberately engaged in activities directed at Tennessee." *Crouch*, 610 S.W.3d at 477-78. As our Supreme Court has stated, "[w]hen a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' it has clear notice that it is subject to suit there[.]" *Sumatra*, 403 S.W.3d at 743 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

In his deposition, Mr. Allred testified as follows regarding Defendant's efforts to conduct business in Tennessee:

Q. Do you currently anticipate, Mr. Allred, that Pierce & Allred Construction will have future contracting projects in the State of Tennessee?
A. I hope so.
Q. Do you have any projects under development right now?
A. In the State of Tennessee?
Q. Yes.
A. No.

* * *

Q. Is [Defendant] still actively licensed as a contractor here in Tennessee?
A. That is correct, yes, sir.
Q. And the information that we have, Mr. Allred, indicates that [Defendant] became licensed as a contractor in Tennessee in March of 2018. Is that consistent with your recollection?
A. That sounds—that sounds correct.
Q. Is it accurate to say that [Defendant] has been continuously licensed as a contractor in Tennessee from March of 2018 to the present?
A. Yes.

Q. It's also accurate to say that you intend to maintain [Defendant] as a licensed contractor in Tennessee for the foreseeable future?
A. Absolutely.

\*     \*     \*

Q. What is David Pierce Builders?
A. David Pierce Builders is the company that Pierce & Allred purchased in 2013.
Q. Does Pierce & Allred still own David Pierce Builders?
A. Pierce & Allred is David Pierce Builders.
Q. Is it your testimony that David Pierce Builders is simply another name for Pierce & Allred Construction, Inc.?
A. There you go.  Yes.
Q. Are you aware that David Pierce Builders maintains a website on the Internet?
A. That's Pierce & Allred's website.
Q. What is the URL address for that website?
A. Davidpiercebuilders.com.
Q. Are you aware that on that website, that David Pierce Builders advertises itself as a licensed contractor in the State of Tennessee?
A. Pierce & Allred is a licensed contractor in the State of Tennessee.

Although Mr. Allred stated that Defendant's contractor's license was active and in good standing at the time of his deposition, shortly thereafter he filed an affidavit in which he testified as follows:

After my deposition in this action I learned that Pierce & Allred Construction, Inc., was dissolved as a for profit corporation −foreign, in Tennessee on August 6th 2019.

Had I been aware that Pierce & Allred Construction, Inc., was no longer in good standing in Tennessee, I would have testified that Pierce & Allred Construction, Inc., is not in good standing and is not seeking to have its status as an active Tennessee corporation renewed.

After my deposition in this action I further learned that Pierce & Allred Construction, Inc., no longer has a valid license to act as a contractor in the State of Tennessee, as its license expired on March 30, 2020.

Had I been aware that Pierce & Allred Construction, Inc., no longer had a valid license to act as a contractor in the State of Tennessee, I would have

10

testified as such and noted that Pierce & Allred Construction, Inc., is not seeking to have its contractor's license renewed.

Pierce & Allred Construction, Inc., will be updating its website to reflect that it is only licensed in the State of Alabama.

(Numbering in original omitted). The trial court, picking up on the last assertion made above, found that Defendant "will be updating its website to reflect that it is only licensed in Alabama." However, as of the date of the filing of this opinion, Defendant's website still prominently displays the words "Licensed in Alabama and Tennessee."

Defendant argues that its contacts with Tennessee are insufficiently connected to Plaintiff's cause of action to provide grounds for personal jurisdiction. Defendant points out that there is not a direct causal relation between its contracting and construction business in Tennessee and the breach of contract and warranty actions arising from the Muscle Shoals construction. The United States Supreme Court recently addressed and rejected a similar argument in *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S.Ct. 1017, 1024-25 (2021), reiterating and clarifying the due process requirements as follows:

> The contacts needed for [specific personal] jurisdiction often go by the name "purposeful availment." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant, we have said, must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). They must show that the defendant deliberately "reached out beyond" its home—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. *Walden v. Fiore*, 571 U.S. 277, 285, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) (internal quotation marks and alterations omitted). Yet even then—because the defendant is not "at home"—the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, "must arise out of or relate to the defendant's contacts" with the forum. Or put just a bit differently, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' "

\* \* \*

11

Our decision in *International Shoe* founded specific jurisdiction on an idea of reciprocity between a defendant and a State: When (but only when) a company "exercises the privilege of conducting activities within a state"— thus "enjoy[ing] the benefits and protection of [its] laws"—the State may hold the company to account for related misconduct.

(Internal citations omitted). The *Ford Motor Co.* Court described the defendant Ford's argument: "In Ford's view, the needed link must be causal in nature: Jurisdiction attaches "only if the defendant's forum conduct *gave rise* to the plaintiff's claims." *Id.* at 1026 (emphasis in original). The High Court responded to this argument as follows:

But Ford's causation-only approach finds no support in this Court's requirement of a "connection" between a plaintiff's suit and a defendant's activities. *Bristol-Myers*, 582 U.S., at ——, 137 S.Ct., at 1776. That rule indeed serves to narrow the class of claims over which a state court may exercise specific jurisdiction. But not quite so far as Ford wants. None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit "arise out of or relate to the defendant's contacts with the forum." *Id.*, at ——, 137 S.Ct., at 1780 (quoting *Daimler*, 571 U.S., at 127, 134 S.Ct. 746; emphasis added; alterations omitted); see *supra*, at 1025. The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct. See also *Bristol-Myers*, 582 U. S., at ——, ——, 137 S.Ct., at 1779–1780, 1780–1781 (quoting *Goodyear*, 564 U.S., at 919, 131 S.Ct. 2846) (asking whether there is "an affiliation between the forum and the underlying controversy," without demanding that the inquiry focus on cause). So the case is not over even if, as Ford argues, a causal test would put jurisdiction in only the States of first sale, manufacture, and design. A different State's courts may yet have jurisdiction, because of another "activity [or] occurrence" involving the defendant that takes place in the State. *Bristol-Myers*, 582 U. S., at ——, ——, 137 S.Ct., 1780, 1780–1781 (quoting *Goodyear*, 564 U.S., at 919, 131 S.Ct. 2846).

*Id.*

Applying this analysis, we hold that Defendant's contacts in purposefully exercising the privilege of conducting activities within Tennessee are sufficiently related to the claims presented here to provide specific personal jurisdiction. Given that Defendant's contracting and residential construction activities in Tennessee are of the same nature as those that occurred in Muscle Shoals, it cannot be said that it is an unfair surprise to Defendant that it would be haled into court to answer and be accountable for the claims of a Tennessee citizen such as these.

Even "if minimum contacts exist" as in this case, there is another analytical step: "the court should then determine whether, even with the requisite minimum contacts, the exercise of jurisdiction would nonetheless be unfair or unreasonable." *Crouch*, 610 S.W.3d at 472. As the *Crouch* Court stated:

> As to the question of whether, if sufficient minimum contacts between the defendant and the forum state exist, the exercise of jurisdiction would nonetheless be unfair or unreasonable, the Court has identified several factors to consider: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the several states in furthering fundamental substantive social policies. [*Burger King*, 471 U.S.] at 476-77, 105 S.Ct. 2174 (citing *World-Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. 580). However, given the existence of minimum contacts, a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477, 105 S.Ct. 2174.

*Id.* at 472-73. Our Supreme Court, analyzing these considerations in *Crouch*, stated:

> As for the burden and expense for Lonestar to litigate this dispute in Tennessee, the same advancements in transportation and communications that have transformed modern business transactions—and personal jurisdiction analysis—tend to lessen any unfair burden associated with a defendant having to litigate a dispute in another state. *See Burger King*, 471 U.S. at 474, 105 S.Ct. 2174. We can glean no special or unusual burden from the limited record before us. We also do not believe that the mere fact that Lonestar would have to travel from Texas to Tennessee amounts to a constitutionally significant burden.
>
> As for the second and third considerations, we do not doubt that Crouch has a substantial interest in obtaining relief in Tennessee, and Tennessee has a corresponding manifest interest in providing residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *See Burger*

13

*King*, 471 U.S. at 473, 105 S.Ct. 2174; *Nicholstone*, 621 S.W.2d at 564 ("Tennessee clearly has an interest in protecting its residents against a breach of contract by nonresidents....").

*Id.* at 485-86. We note that Muscle Shoals, Alabama is only about a two and a half hour trip via automobile to Nashville, much closer than the distance from Texas considered by the Court in *Crouch*. As in *Crouch*, we likewise conclude that Defendant "has not carried the burden of establishing that the exercise of personal jurisdiction in this particular case would be unreasonable or unfair," and that "the exercise of specific personal jurisdiction over [Defendant] in Tennessee in this case does not offend traditional notions of fair play and substantial justice and is, therefore, constitutionally permissible." *Id.* at 486.

## B. Venue

The trial court also held that venue was improper in Davidson County. As this Court has observed,

> the term "venue" refers to the county, district, subdivision or geographical area in which a case may be tried. "Venue" is not synonymous with "jurisdiction," which refers to the power or authority of the court to decide certain cases. Venue is the specific place where a court with jurisdiction may hear a complaint or other pleading. Proper venue is grounded in fairness or convenience to the litigants or "other commanding policy considerations." *See*, generally, 77 AM.JUR. 2d Venue § 1.

*Kampert v. Valley Farmers Co-op*, No. M2009-02360-COA-R10-CV, 2010 WL 4117146, at *2 (Tenn. Ct. App. Oct. 19, 2010). "[V]enue is today largely regulated by statute." *Id.* at *3. Tenn. Code Ann. § 20-4-101(a) provides that "[i]n all civil actions of a transitory nature, unless venue is otherwise expressly provided for, the action may be brought in the county where the cause of action arose or in the county where the individual defendant resides." The trial court correctly held that Plaintiff's action for breach of contract and warranty is a transitory action. "A transitory action is based on a cause of action of a type that can arise anywhere." *Id.* at *2 (quoting *Curtis v. Garrison*, 211 Tenn. 339, 364 S.W.2d 933, 936 (Tenn. 1963)).

As we stated in *Kampert*,

> a local action is based on a cause of action that can only arise in a particular locality, because "the subject of the action" (meaning that which has sustained the injury complained of) is local, "and cannot be injured at any other place." *Burger v. Parker*, 290 S.W. at 23. Local actions generally involve land. Examples include an action to quiet title to land, a trespass, or

14

an injury to real estate. However, not every action that involves a specific tract of land is considered a local action. For example, in *Mattix v. Swepston*, 127 Tenn. 693, 155 S.W. 928 (Tenn. 1913), a suit that arose from obstruction of an easement was determined to be a transitory action, because the damages complained of were to the plaintiff's timber business, not to the land itself nor to the plaintiff's title to that land.

*       *       *

[A]lthough the plaintiffs cited a variety of possible claims against the defendants in their complaint, they did not even mention injury to the land. . . . [T]he alleged negligence in the present case involved faulty construction of new buildings on the plaintiffs' land. If we were to hold this to be a local action, it would effectively make all actions on construction contracts local, and it would render void any forum selection clause in a construction contract that designates venue in a county other than the one where the construction takes place.

Such a deviation from current well-established law would not only overturn settled precedent, it would contradict the statutory implication that contracts for improvement to real estate may include choice of venue provisions.

2010 WL 4117146, at *2, *4.

The trial court's ruling of improper venue was primarily grounded in its finding that Defendant "does not maintain a registered agent for service of process in Tennessee." Tenn. Code Ann. § 20-4-104 governs venue for corporate defendants, providing that

For all civil actions, if the defendant is not a natural person, the action shall be brought in:
(1) The county where all or a substantial part of the events or omissions giving rise to the cause of action accrued;
(2) The county where any defendant organized under the laws of this state maintains its principal office; or
(3)(A) If the defendant is not organized under the laws of this state, the county where the defendant's registered agent for service of process is located; or
(B) If the defendant does not maintain a registered agent within this state, the county where the person designated by statute as the defendant's agent for service of process is located.

15

In the course of applying for Defendant's contractor's license, Mr. Allred designated Will Andrews, a Davidson County resident, as its registered agent for service of process in Tennessee, using Mr. Andrews' Nashville business address as the registered address for the corporation. Although, as already noted, Mr. Allred allowed Defendant's certificate of authority to be revoked and its contractor's license to expire, Tenn. Code Ann. § 48-25-302 provides in pertinent part:

> (a) If the secretary of state determines that one (1) or more grounds exist under § 48-25-301 for revocation of a certificate of authority, the secretary of state shall serve the foreign corporation with notice of the secretary of state's determination under § 48-25-110 . . .
>
> (b) If the foreign corporation does not correct each ground for revocation . . . the secretary of state may revoke the foreign corporation's certificate of authority by signing a certificate of revocation that recites the ground or grounds for revocation and its effective date. . . .
>
> (c) The authority of a foreign corporation to transact business in this state ceases on the date shown on the certificate revoking its certificate of authority.
>
> (d) The secretary of state's revocation of a foreign corporation's certificate of authority appoints the secretary of state the foreign corporation's agent for service of process in any proceeding based on a cause of action which arose during the time the foreign corporation was authorized to transact business in this state. Service of process on the secretary of state under this subsection (d) is service on the foreign corporation. . . .
>
> (e) Revocation of a foreign corporation's certificate of authority does not terminate the authority of the registered agent of the corporation.

In this case, Plaintiff served process on both Defendant's registered agent and the Tennessee Secretary of State. Service of process was therefore sufficient, and Defendant did not argue otherwise to the trial court. Defendant does not identify any other valid reason why venue would be improper in Davidson County.

## V. CONCLUSION

The judgment of the trial court is reversed, and the case is remanded to the trial court for such further action as may be necessary, consistent with this opinion. Costs on appeal are assessed to Appellee, Pierce & Allred Construction, Inc., for which execution may issue, if necessary.

_____
KRISTI M. DAVIS, JUDGE

16